UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

International Rehabilitative Sciences
Inc., d.b.a. RS Medical, as assignee of
Anderson, Charles, et al.,

                            Plaintiffs,                    **Hon. Hugh B. Scott**

                                                       12CV1225A

                             v.                         **Report &**
                                                    **Recommendation**

Government Employees Insurance Company,

                                    Defendants.
_____

Before the Court are: the defendant's motion to dismiss (Docket No. 37) and the defendant's motion to compel (Docket No. 60).[1]

**Background**

The plaintiff, International Rehabilitative Sciences Inc., d.b.a. RS Medical (referred to as "RS Medical") brought this action as the assignee of 154 individuals. The plaintiff asserts that each of the assignors was covered by a policy issued by the defendant, Government Employees Insurance Company ("GEICO"). Each of the assignors executed an assignment of benefits granting their no-fault rights pursuant to their respective automobile insurance polices to RS

---

[1] Discovery issues raised in the defendants' motion to compel are resolved in a separate Decision & Order.

1

Medical for the purposes of collecting payment for medical services rendered after motor vehicle accidents. RS Medical alleges that it provided durable medical equipment – an interferential stimulator – to each of the assignors pursuant to prescriptions issued by medical providers treating the assignors for injuries sustained in various motor vehicle accidents. (Docket No. 34 at ¶¶ 14-16). RS Medical claims that GEICO failed to pay for durable medical equipment provided to each of the assignors as part of their treatment for injuries sustained in the various accidents. (Docket No. 34 at ¶¶ 8-12). The plaintiff asserts that GEICO's failure to pay for the durable medical equipment constitutes a breach of contract. (Docket No. 34 at ¶¶ 13-44). As a second cause of action, the plaintiff also asserts that GEICO's failure to pay for the durable medical equipment constitutes bad faith in pursuing examinations under oath pursuant to Regulation 68 promulgated under the New York State Insurance Law. Rule 68 provides that:

> An insurer shall pay benefits for any element of loss, other than death benefits, directly to the applicant or, when appropriate, to the applicant's parent or legal guardian or to any person legally responsible for necessities, or, upon assignment by the applicant or any of the aforementioned persons, shall pay benefits directly to providers of health car services as covered under section five thousand one hundred two (a)(1) of the Insurance Law.

11 NYCRR §65-3.11.

Regulation 68 permits an insurance carrier to obtain verification of a claim for benefits by taking an examination under oath of the claimant. The plaintiff contends that any such examinations under oath, pursuant to the regulation, must be "held at a place and time reasonably convenient to the applicant." 11 NYCRR §65-3.5(e). The plaintiff asserts that GEICO noticed the Regulation 68 examinations to take place at a law office in Woodbury, New York. (Docket No. 34 at ¶¶ 45-50). RS Medical alleges that GEICO only began requesting the examinations

under oath after RS Medical began exercising its rights pursuant to Rule 68 and was successful in several arbitrations against GEICO. (Docket No. 34 at ¶¶ 52-55).  RS Medical, which is located in Vancouver, Washington, argues that there was no need to require the examination under oath 2000 miles away in Woodbury, New York.  (Docket No. 34 at ¶ 58).

As a third claim, the plaintiff seeks consequential damages including damages related to the reduction of revenue and the increase in cost of doing business based upon GEICO's alleged failure to make timely payments of the plaintiff's claims. (Docket No. 34 at ¶¶ 67-76).

**Motion To Dismiss**

The defendant has moved to dismiss the second and third causes of action pursuant to Rule 12 of the Federal Rules of Civil Procedure. In addition, the defendant seeks to dismiss the plaintiff's claim for punitive damages. Finally, GEICO argues that the plaintiff cannot maintain its claim that GEICO is estopped from challenging the plaintiff's billing practices. (Docket No. 37).

    **Bad Faith Claim**

The defendants argue that the plaintiff's second cause of action, alleging bad faith, is redundant, and must be dismissed under New York law. (Docket No. 38 at page 3).  Under New York law, "implicit in contracts of insurance is a covenant of good faith and fair dealing." Bi–Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y., 10 N.Y.3d 187, 194, 856 N.Y.S.2d 505, 886 N.E.2d 127 (2008) (citing N.Y. Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995)). However, "New York law ... does not recognize a separate cause of

action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir.2002). Where a claim for bad faith is duplicative of a breach of contract claim, it is properly dismissed. See Texas Liquids Holdings, LLC v. Key Bank Nat'l Assoc., 2007 WL 950136, at *2 (S.D.N.Y. March 27, 2007).

 In the instant case, the plaintiff's breach of contract and bad faith claims both involve the defendant's request for verification relating to the respective claims for payment for the interferential stimulators. The plaintiff's breach of contract claim asserts that GEICO denied payment based upon RS Medical's failure to appear at an examination under oath at part of the verification process. (Docket No. 34 at ¶31). The plaintiff's bad faith claim is based on the very fact that GEICO requested verification (the plaintiff assert that GEICO did not ask for verification until after RS Medical exercised its rights under Regulation 68), and the fact that GEICO scheduled the verification examination to take place in Woodbury, New York. (Docket No. 34 at ¶¶52-58). The plaintiff seeks identical damages with respect to both claims. (Docket No. 34 at ¶¶ 44 and 66). The plaintiff's breach of contract and bad faith claims are based upon the same set of operative facts. Indeed, in response to the instant motion, the plaintiff acknowledges that "bad faith is not a separate cause of action per se" but that it is "pled here as bad faith in addition to the breach of contract action" because it is "a required element for the [plaintiff's claims for] consequential and punitive damages." (Docket No. 50 at page 13). In this regard, the plaintiff argues: "bad faith is not equal to breach of contract resulting in only breach of contract damages, but is a necessary element of proof to recover consequential damages." (Docket No. 50 at page 13). The plaintiff cites to Bi-Economy in support of this proposition

4

(Docket No. 50 at page 13). In Bi-Economy, the plaintiff asserted a claim for consequential damages resulting from the defendant insurer's failure to fulfill its obligations under a commercial property insurance policy that included coverage for business interruption. Bi-Economy, 10 N.Y.3d at 193-196. The lower court had dismissed the plaintiff's consequential damages claim in that case holding that "the insurance policy expressly exclude[d] coverage for consequential losses, and thus it cannot be said that [consequential] damages were contemplated by the parties when the contract was formed." Bi-Economy, 10 N.Y.3d at 192. Upon appeal, the Court of Appeals stated that "[t]he party breaching the contract is liable for those risks foreseen or which should have been foreseen at the time the contract was made ... It is not necessary for the breaching party to have foreseen the breach itself or the particular way the loss occurred, rather, "[i]t is only necessary that loss from a breach is foreseeable and probable. ... To determine whether consequential damages were reasonably contemplated by the parties, courts must look to the nature, purpose and particular circumstances of the contract known by the parties . . . as well as what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made." Bi-Economy, 10 N.Y.3d at 192-193. The Court of Appeals concluded that the purpose served by business interruption coverage could not be clearer—to ensure that Bi-Economy had the financial support necessary to sustain its business operation in the event disaster occurred. Bi-Economy, 10 N.Y.3d at 194. The Court noted that "implicit in contracts of insurance is a covenant of good faith and fair dealing, such that a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims," (Bi-Economy, 10 N.Y.3d at 194), and concluded that "in light of the nature and purpose of the insurance contract at issue, as well as Bi-

Economy's allegations that Harleysville breached its duty to act in good faith, we hold that Bi-Economy's claim for consequential damages including the demise of its business, was reasonably foreseeable and contemplated by the parties, and thus cannot be dismissed on summary judgment." Bi-Economy, 10 N.Y.3d at 195-196. The Court in Bi-Economy upheld the plaintiff's claim for consequential damages as being foreseeable and contemplated by the parties that negotiated a business interruption insurance policy. The Court did not create a separate "bad faith" cause of action or abrogate New York caselaw holding that a bad faith claim must be dismissed where it is based upon the same operative facts as a companion breach of contract claim.

Because the plaintiff's bad faith claim is based upon the same operative facts as the plaintiff's breach of contact claim, it must be dismissed. The defendant's motion to dismiss the second cause of action should be granted.

### Consequential Damages Claim

The defendant also seeks to dismiss the plaintiff's claim for consequential damages as set forth in the third cause of action. (Docket No. 38 at page 6). The plaintiff again points to Bi-Economy as the authority supporting the plaintiff's claim for consequential damages in this case. Again, the plaintiff's reliance upon Bi-Economy is misplaced. In Bi-Economy, the Court of Appeals discussed the standard for a consequential damages claim under New York law:

> It is well settled that in breach of contract actions "the nonbreaching party may recover general damages which are the natural and probable consequence of the breach." ... Special, or consequential damages, which "do not so directly flow from the breach," are also recoverable in limited circumstances ... In

6

> [Kenford v County of Erie, 73 N.Y.2d 312 (1989)] we stated that "[i]n order to impose on the defaulting party a further liability than for damages [which] naturally and directly [flow from the breach], i.e., in the ordinary course of things, arising from a breach of contract, such unusual or extraordinary damages must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." ... We later explained that "[t]he party breaching the contract is liable for those risks foreseen or which should have been foreseen at the time the contract was made." ... It is not necessary for the breaching party to have foreseen the breach itself or the particular way the loss occurred, rather, "[i]t is only necessary that loss from a breach is foreseeable and probable" ... . To determine whether consequential damages were reasonably contemplated by the parties, courts must look to "the nature, purpose and particular circumstances of the contract known by the parties . . . as well as 'what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made."

Bi-Economy, 10 N.Y.3d at 192-193. The plaintiff's argument that GEICO's no-fault auto insurance policies contemplated consequential damages (including loss of revenue and diminution of business value) flowing to a third-party payee based upon untimely payment of claims (Docket No. 50 at page 9) is not persuasive.[2] Unlike the insurance contract at issue in Bi-Economy, the plaintiff does not point to any provision in GEICO's no-fault insurance policies

---

[2] The plaintiff asserts that in "addition to the consequential damages suffered by the medical provider, there are profound and serious consequential damages suffered by each of the numerous injured parties who are affected in their ability to get treatment, to get their lost wages paid, and the health cost in not getting treatment and the worry and strain of having the no fault bills outstanding and their ability to prove the serious injury threshold due to the inability to get treatment, and the decreased value in their personal injury cases due to the inability to get treatment, as well as the compromise of the patient-provider relationship." (Docket No. 50 at page 11). The Court notes that these allegations are not contained in the complaint. Further, the plaintiff has not demonstrated that the assignors assigned anything more to RS Medical than the right to seek payment for the durable medical equipment. Finally, the plaintiff cites to no authority supporting the proposition that these far-reaching consequential damages were within the contemplation of the parties as the probable result of a breach at the time of, or prior to, contracting for the no-fault insurance at issue.

underlying the instant claims which purports to cover consequential damages such as business interruption, loss of revenue or diminution of business value incurred by a third-party payee. A similar claim was rejected in State Farm Mut. Ins. Co. v Anikeyeva, 950 N.Y.S.2d 726 (Sup. Ct. Nassau Cty., 2012):

> [The defendant] seek damages for the loss of defendant Anikeyeva's business, allegedly caused by the State Farm's failure to pay no-fault benefits under its policies. Consequential damages are recoverable for breach of contract in limited circumstances, where such damages were within the contemplation of the parties as the probable result of a breach at the time of, or prior to, contracting (Bi-Economy Market, Inc v Harleysville Ins Co of New York, 10 NY3d 187, 192 [2008], citing Kenford Co v County of Erie, 73 NY2d 312, 319 [1989]). Defendants were not yet on the scene at the time that the subject insurance policies were issued by State Farm to its policy holders. Therefore, there could have been no contemplation of defendants' consequential damages at the time the policies were issued. In short, defendants simply have no cause of action for consequential damages based upon the allegations of State Farm's multiple breaches of contract. Accordingly dismissal of the second counterclaim for consequential damages must be granted.

Anikeyeva, 950 N.Y.S.2d. at *5-6. See also Genovese v. State Farm Mut. Auto. Ins. Co., 965 N.Y.S.2d 577 (2d Dept.,2013)(The Supreme Court properly granted motion to dismiss the second cause of action, which sought consequential damages for breach of the no-fault insurance benefits policy). RS Medical was not a party to the no-fault insurance contracts at issue. The plaintiff does not allege, and has not demonstrated that it would be possible for them to allege in good faith, that consequential damages to third-party payees was contemplated by the parties at the time of the issuance of the respective policies.

Based on the above, it is recommended that plaintiff's claim for consequential damages,

as stated in the third cause of action, be dismissed.

### Punitive Damages Claim

In <u>Rocanova v. Equitable Life Assur. Socv. of U.S.</u>, 83 N.Y.2d 603, 613–17 (1994), the New York Court of Appeals held that damages arising from a breach of contract will ordinarily be limited to contract damages but that punitive damages may be recoverable if necessary to vindicate a public right. <u>Rocanova</u>, 83 N.Y.2d at 613. In pleading such a claim for punitive damages, the New York law requires allegations that: 1) the defendant's conduct was actionable as an independent tort; 2) the tortious conduct must be egregious as in "gross," "morally reprehensible,'" or of "such wanton dishonesty as to imply a criminal indifference to civil obligations;" 3) the conduct must be directed to plaintiff; and 4) it must be part of a pattern directed at the public generally. <u>New York University v. Continental Ins. Co.</u>, 87 N.Y.2d 308 (1995) (internal citations omitted).

The plaintiff's complaint fails to state a claim that the defendant's conduct is actionable as an independent tort. Thus, the plaintiff's claim for punitive damages in this case must be dismissed.

### Estoppel Claim

The plaintiff's complaint sets forth allegations contending that the defendants cannot challenge the plaintiff's billing practices pursuant to the doctrine of collateral estoppel. RS Medical alleges that $2,495.00 is the "usual and customary rate" of the interferential stimulator unit. The plaintiff contends in the complaint that because GEICO had paid this rate in the past, it

cannot challenge the rate in this action. (Docket No. 34 at ¶ 77). Further, the plaintiff's complaint asserts that this rate was "adjudicated" because GEICO paid that rate after prior arbitration decisions. (Docket No. 34 at ¶¶ 79-80). The defendants argue that the majority of arbitration decisions between the parties "actually denied the plaintiff's claims for reimbursement." Further, GEICO states that the issue which was the subject of the arbitrations was that of "medical necessity" of the interferential stimulation unit – not pricing. (Docket No. 38 at page 14). The defendant requests that the Court reject the plaintiff's claim that collateral estoppel applies under these circumstances. (Docket No. 38 at page 15).

Under New York law, collateral estoppel, or issue preclusion applies "'if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." Fludd v. Fischer, 2014 WL 2535247 (2d. Cir. 2014) citing LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir.2002) (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349, 690 N.Y.S.2d 478, 712 N.E.2d 647 (1999)). The burden of proof on the "full and fair opportunity" requirement rests with the party opposing collateral estoppel. See Schwartz v. Pub. Adm'r of Cnty. of Bronx, 24 N.Y.2d 65, 73 (1969).

The plaintiff's response to the instant motion does not respond in any way to the portion of the defendant's motion which attacks the plaintiff's assertion of collateral estoppel. Inasmuch as the plaintiff has not disputed the defendant's representation that the pricing of the interferential stimulators was not the subject of any prior litigation, the record currently before the Court does not support the application of collateral estoppel on this issue.

**Conclusion**

It is recommended that the defendant's motion to dismiss be GRANTED consistent with the above and that the defendant be directed to file an answer to the remaining claims in the complaint.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not,

presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
August 5, 2014